Mr. Robinson is facing an imminent violation of his double jeopardy rights because one of two things is true in this case. Either when ten of Mr. Robinson's peers voted not guilty, he was acquitted under Louisiana law as written at the time and as is still on the books today, or the judge declared a mistrial without Mr. Robinson's consent and without manifest necessity. Either of these permits this Court to vindicate Mr. Robinson's federal rights and grant relief. Can I ask you a question about, I have one, a question about both. So as to the first one, what is the best case that you have for the proposition that a defendant can be acquitted with no judgment entered by the trial court? I think that would be U.S. v. Ball. In that case, the votes were counted but the judgment couldn't be entered because it was a Sunday and the court held that jeopardy was complete and that it was a matter of substance not form. Right. But there's no, the judgment is still entered eventually, it's entered on Monday. So my question remains, what is the best case that you have for the idea that someone can be acquitted with no judgment ever entered by the trial court? There's all kinds of different ways in double jeopardy cases, as you know, as well as anyone, where the form of the judgment can sometimes take the form of like a conviction. So for example, we, you know, Ash v. Swinson, we had an en banc case about that a few years ago. And so some, and we can say, well, actually it's a conviction, but it's a conviction of lesser-included offense and that's an acquittal on the greater. So I understand, like there's all kinds of permutations. But if there is anything consistent, it strikes me that it's always there must be a judgment of some form entered by the trial court and then we can fight about what the judgment means. But I've never seen a case where someone says I was acquitted successfully, people have tried this, but I've never seen it successfully done where I was acquitted, no judgment. Have I missed one? I'm not sure, Your Honor, I'm not sure in Ball if the judgment was ever entered, but I also, I would say in Bluford, the logic of the court was that the deliberations were continuing despite the oral announcement of the, of the votes. And I think part of the reasoning in that case was that the suggestion in that case was that if deliberations had been concluded and the votes had been put in writing, that might be the difference Your Honor is looking for. And by thinking of Bluford's, the Supreme Court case from like 2013 or whatever, that obviously goes against you. Yes. So I, I guess maybe we should move to the second one because that one strikes me as sort of equally interesting. Suppose that the, that you're right, that, that this was an errant declaration of a mistrial. You have an obligation under Article 77, 775.1 as Judge Douglas pointed out in the Magistrate Judge's R&R to have a contemporaneous objection of the erroneous declaration of a mistrial and there was none. So how is that even before us? So I think Your Honor is referring to the decision in Copeland from the Louisiana Intermediate Appellate Court, which was a different Intermediate Appellate Court than the one here. And I don't think is established Louisiana law and, and I don't, and I think there have been federal, other federal district courts that have said that the Copeland rule is not a binding rule. And I think what's important in this case is that Mr. Robinson objected in advance to the very situation that occurred and he preserved that objection. He said, if 10 jurors are polled and they vote to acquit, I object and that's what happened later. And he'd already sought supervisory review on that. So I believe that would be the law of the case. So your argument is that in fact that was sufficient under Louisiana law to preserve the objection. Yes, Your Honor. Even though 775.1 specifically says contemporaneous objection has to be done at the time of the error. In 775.1, he would be given the option to seek, to have a 24-hour stay and seek review. But I don't believe there's a case that says that's required and I believe what he did in this case, I also think this case is unique because he, he neither wanted the jury to continue deliberating nor did he want a mistrial. He wanted his acquittal to be honored. And so that's an unusual posture for a mistrial in any case. But I think what he did in advance to object to this precise situation would be enough. It's an interesting question about the premature declaration of mistrial. I'm curious what you think about this hypothetical. I realize this is different. But imagine you have a state law that says before a judge can enter a mistrial, you have to give 10 Allen charges, right? It's not, it's not the normal standard that applies in federal, in the federal system, you know, reasonableness and whatever. It's 10. The number's 10. And so the jury's deadlocked and they send back notes and, you know, the judge gives a couple Allen charges like, oh, you know, I've got golf, I've got to go on vacation, I've got, you know, a bunch of reasons that are not good reasons. And so he just says, you know, I think I've satisfied the federal standard. I think I've satisfied the Supreme Court's instructions in Allen. I've given two or three or five, but I'm not going to sit here and do 10. And so he intentionally violates the state law, intentionally gives too few Allen charges under state law. Was it, was the mistrial declared prematurely in a way that would acquit the defendant? Um, I think if, if he, if he does it on purpose, he very intentionally does it this way. I would, I would say that, well, I guess if the question is, could he be in front of this court with, for a violation of his federal rights, I guess I'm not sure. He has rights under Allen. He's got rights. He has the same acquittal rights that your client has, the same double jeopardy claim, everything else. And it has the same kind of, as you point out in the reply brief, this mixture between an entitlement, in my hypothetical, make it really good, right? The state constitution says 10. The state Supreme Court has said 35 times it has to be 10. There's uniform intermediate appellate courts that say there are no exceptions for golf or vacation or futility, right? Make it as good as you possibly want. But there's no doubt that this requirement comes from state law, not federal law. And the only thing that we're being asked in 2241 is, what is the federal implication of the state law entitlement? I think it's possible that he could succeed under that scenario if he is not following state law as written. And I guess maybe there's a distinction between state law as developed by the courts or state law as written. But I think if he were expressly violating state law as written, he would have effect. And what is the best Supreme Court case for that? Because the only things that I've ever seen from the Supreme Court of the United States is, it has to be a federal law. It cannot be state violations of state law, no matter how pellucid, do not rise to the level of federal claims. And the Supreme Court has said that in the strongest statement, it's probably in Estelle versus McGuire, but there's, I don't know, a dozen different iterations of this where they say, the state judge can absolutely violate state law. It can absolutely be illegal. We can absolutely assume all of the things that the petitioner is putting in front of us, but it's still not a federal claim. And the only thing that we can do in this tribunal in 2241 is a federal claim, constitutional claim. So I think the question, and I hope I'm not avoiding your question, but I think it would be on the state to demonstrate a manifest necessity in that circumstance. And I think what might distinguish Mr. Robinson's case is that I don't believe a misconstruing of federal law would constitute a manifest necessity. And so I think, you know, Arizona versus Washington, which says the state has to consider less severe alternatives than exposing the defendant to jeopardy a second time, would also support this in the sense that in this case, unlike your scenario, there was an obvious easier path that would not expose Mr. Robinson to second jeopardy, which was to honor the acquittal as written in state law. And so that would distinguish Mr. Robinson's scenario potentially from the scenario you're presenting. My last question, and I want to make sure you have time to make whatever other points or entertain other questions, but as we sit here today in July of 2023, we still have zero Louisiana cases from any court that say that your client was acquitted. We have the Supreme Court, that's a question, not a statement. I just want to make sure I know the authority. I've seen the Louisiana Supreme Court case saying, we haven't decided it yet, you may be called upon to decide it later. We obviously have a bunch of intermediate courts rejecting the proposition. Are there any cases after the briefing closed that support the proposition that there was an acquittal at the first trial? No. And I think what's important is that we think the record is clear that all the courts that have ruled specifically in this case have done so on the basis of federal law. And I think, you know, if a court had ruled on this on the basis of state law, that would be a different question. But the record is clear that the trial court was ruling on the basis of the state law and certainly the intermediate appellate court, the Louisiana Fifth Circuit, indicated in its denial of writs in the case that it was ruling on the, it felt compelled by Ramos to rule the way it did. So I think for that reason, it is clear that state law was not reached by any court and this court can presume the merits of the federal question were reached. Mr. Robinson is entitled to that presumption under Michigan v. Long as incorporated on collateral review in Harris and in Coleman. So because that federal question was reached on the merits, this court can vindicate Mr. Robinson's federal double jeopardy rights and reach the, also reach the merits of that question. Let me just ask you this, I mean, Judge Oldham asked you whether a federal court could find double jeopardy based on, in a state trial, based on error of state law. There are plenty of cases that aren't there that say that if a state court requires an additional element of a crime that didn't exist and the guy's acquitted, he can't be retried, don't they? Isn't that double jeopardy? Yes. Isn't that where a federal court is saying that based on this misinterpretation of their own state law, still if he's, if he's, if the jury rendered a verdict or if the judge directed a verdict, that's jeopardy and he can't be retried. Yes, I would agree, Your Honor. So, as I said, we maintain that there are the two paths to relief, the mistrial path and the acquittal path. I would, regarding whether or not there has been state law at issue in this case, I guess I would like to make two maybe overarching points. And one is that it appears that the thrust of the state's argument is that Ramos, by its terms, erased or voided the Louisiana verdict rules as written. And that, if I'm understanding correctly, therefore any act by the state court would have had to have been an act interpreting state law in some way. But that's not what the federal court did. It did not erase the Louisiana laws as written. In fact, Ramos did not in any way even mention the Louisiana Constitution or the Louisiana Code article. It simply acknowledged the existence in Louisiana and Oregon of non-unanimous verdict rules and then found them to be unenforceable. And there has been no support provided by the respondent for the notion that that's what happened to the Louisiana statutes in this case. And as has been acknowledged by Your Honors, the Louisiana Supreme Court has subsequently indicated that they don't believe that that's what Ramos did. I think the other perhaps overarching point is that the day after Ramos came down, it was understood throughout the state that trials could not proceed with non-unanimous convictions. Not because of an action by the Louisiana Supreme Court or because of an action by the Louisiana legislature, but because everyone understood that that would result in potentially an unconstitutional verdict and there was no point to it. And the state in this case asked the trial court to treat acquittals the same way. Not asking for a ruling on the basis of Louisiana law, but asking for a ruling on the basis of Ramos. And that's what they put in their brief. That's what they argued to the trial court. That's what the trial court adopted. And that's what the intermediate appellate court felt compelled by when it denied relief in this case. So... Remind me, did Louisiana, how many times was there any kind of habeas or other review at the appellate or Supreme Court level in Louisiana on your client's claim? Just once? I believe just once. Did the Louisiana Supreme Court write anything or they just denied whatever it's called? Denied the written petition or something? Correct. Okay, so we don't really know what Louisiana Supreme Court's view is on Louisiana law and whether it survives. We know from... I'm sorry?  On acquittals. We know subsequently that they have ruled that Ramos had nothing to say about acquittals. So it would be an open question of state law that they don't believe has been, that they have not decided and they don't believe has been dictated by Ramos. You're saying because we already know in this case, your client's case, that the ruling was based on Ramos, on Supreme Court, that there's no longer, I'm thinking of Younger versus Harris. There's no longer a state law issue because of the way your client was treated? I'm saying the record makes it very clear that there was no state law decision at any point in this case. And to the extent it's unclear, he would be entitled to that presumption. If I could briefly quote from Coleman. You probably did have an argument you wanted to make. In Coleman, the court said that federal courts on habeas corpus review of state prisoner claims will presume no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law or to be interwoven with federal law and when the adequacy and independence of any possible state ground is not clear from the face of the opinion. And I think it's, if anything, what's clear from any of the opinions to the extent they were being based on state law, they were based on federal law. And therefore, Mr. Robinson would be entitled to that presumption that the state court reached the merits of the federal question and denied Mr. Robinson relief on that basis. And that's precisely the situation where federal courts have intervened to vindicate double jeopardy rights in the past. Counsel, we have you briefed. You've been asked a lot of questions. If you believe you still have something significant that we wouldn't pick up from your briefs and otherwise, I'll give you some more time. Otherwise, your time is up. I'll reserve my time for rebuttal. Thank you, Your Honor. All right, sir. Good morning, Your Honors. Assistant District Attorney Darren Alamon for the appellee warden in this habeas corpus action. We'd submit at the outset that the federal district court below just got it right when the federal district court said this matter is not cognizable in federal habeas corpus because if this petitioner is, in fact, entitled to relief, it stems from Louisiana law. In particular, Louisiana Constitution Article I, Section 17A and Code of Criminal Procedures 782A. There was something in the petitioner's brief that I find particularly interesting that I read as somewhat of a concession. One, the petitioner appears to concede that Louisiana had the right to change the state of the law either through legislation or through jurisprudence before his trial to dictate that unanimity is required to acquit for pre-January 1st, 2019 crimes because that's when the Louisiana law change went into effect, January 1st, 2019. Second, the petitioner also appears to concede that if this change had, in fact, happened, either again through legislation or through jurisprudence, that he'd have no argument in this federal habeas action. Well, frankly, we would agree. I would first submit that even if no such change had happened, we would still be arguing that because the claim for relief comes from state law, it's still not cognizable. But this court doesn't need to venture into that territory because such a change did happen. Now, it didn't come from the Louisiana Supreme Court. The petitioner is right to point out that in State v. Gasser, the state Supreme Court pre-termitted this analysis. They said Ramos didn't explicitly rule on this. Whether Ramos does dictate or whether state law dictates unanimities required to acquit, we're not going to reach that issue. But we do have some lower state court decisions. The first one that comes to mind, and the federal district court quite aptly pointed this out below, in a Resinova legal issue, you're always going to get the first decision from the trial court. And in ruling on our motion for a special jury instruction that unanimity is required to acquit, the Louisiana district court did, in fact, find that even for pre-January 1, 2019 crimes, you need a unanimous verdict to acquit. We also have a writ denial, a very detailed one, from the State Fifth Circuit, again, before the hung jury in this case, and from the Louisiana Third Circuit, State v. Rogers, unrelated case, but the same issue, also decided. Isn't Louisiana law clear that opinions on writ denials are not precedential? Louisiana jurisprudence does say that, Your Honor. I think this somewhat proves our point, in a way, because that's also a facet of Louisiana state law that's not cognizant on federal habeas corpus. I consider it rather like how, in a federal habeas corpus proceeding, when you're reviewing sufficiency of the evidence, a federal court doesn't look to, say, the Louisiana statute 15-438 that says circumstantial evidence has to exclude any probability of an innocent explanation. A federal court doesn't look to whether that gives any additional layer of protection. It just looks to Jackson v. Virginia. Similar to this case, I would say whether or not that's true, that just shows that that's not cognizable in this federal habeas proceeding. But what we're looking for is what Louisiana law is. And wouldn't what the Supreme Court of the state says be controlling? It is, Your Honor, and I certainly do wish the state Supreme Court had not pretermitted the issue in Gasser. I actually argued Gasser, and I pushed pretty hard, albeit unsuccessfully, for them to decide that issue. But the writ denials below do at least show the thinking of Bench and Barr. And regardless, even if we were to discount the writ denials in Rogers and in this case from the Louisiana Intermediate Courts, we still have the ruling from the Louisiana District Court. The petitioner has pointed out in his briefing that, well, there are certain procedures you have to follow to raise a constitutional challenge in Louisiana law. But again, that goes to the proper interpretation of Louisiana law, also not cognizable. In our motion for special jury instruction, we didn't just argue Ramos. We also argued how Ramos uniquely intersects with Louisiana law itself. And I do wish the writ denial from the Fifth Circuit or maybe even the Third Circuit's writ denial in Rogers would have been a little clearer. But again, federal habeas corpus relief exists to vindicate federal rights guaranteed by the United States Constitution, not to essentially, for lack of a better way of putting it, grade the papers of the state courts. In his reply brief, the petitioner has suggested that we essentially make a Rooker-Feldman argument when we talk about inextricable intertwinement with federal law and state law. And that's probably my fault. I probably should have chosen different wording in our original brief. But we're not arguing Rooker-Feldman. I'd look a little silly if I did argue that, because the case law is very clear that habeas is an exception to Rooker-Feldman. The petitioner also seems to cite jurisprudence relating to procedural default, that for the purpose of procedural default, if state law and federal law is inextricably intertwined, procedural default doesn't carry the day. But we're not arguing procedural default, at least not as to the question of whether this petitioner was acquitted. We're arguing cognizability. And in this case, quite simply, we just have the state of the loss in Louisiana right now, at the very least, the faking of bench and bar dictates that unanimity is required to acquit even for pre-January 1st, 2019 crimes. It may be that one day the Louisiana— Stop me there, because I'm contemplating what you're saying. Among the things that former magistrate judge Dana Douglas said is she's relying on procedural default and the failure to follow the mistrial rules. Are you—I don't want to use too strong a word—let me just say you're not relying on that here? To the extent that the petitioner is arguing that a mistrial was granted without manifest necessity, you know, we do believe the magistrate judge got that correct. I think the greater issue is whether he was actually acquitted rather than a mistrial being granted absent manifest necessity, because to me it's well settled that a home jury is the prototypical example of manifest necessity. So we are relying on that procedural bar for the purpose of that, what I'll call sub-argument. But I do think the greater argument before this court is whether, in fact, he was acquitted and there was no mistrial. You're not arguing that the failure of Owen to object to the mistrial was a procedural default? I think it was a procedural default as to whether a mistrial was improperly granted independent of the acquittal question. I don't necessarily think it's a procedural default as to the question of whether he was acquitted. For that, I would say that relies solely on Louisiana law. It's not cognizable in federal habeas. So the procedural default I think would apply to, I guess I'll say one of the sub-issues, but probably not the main issue that's before this court. Well, I mean, the defendant took up to the Court of Appeals for review whether or not the jury instruction that the ten-person . . . yeah, ten-two verdict for acquittal was effective, and that was . . . so that got reviewed, didn't it? Yes, Your Honor, it did. And that's the purpose for an objection? That's correct, Your Honor. So how could there be procedural default in failure to object? I would suggest that . . . I mean, that procedural default is a waiver argument, isn't it? Yes, sir. I would suggest that 775.1, as interpreted by the state court decision from, I believe, the Fourth Circuit in State v. Copeland, for the purpose of the mistrial, is clear that the objection has to come at the time of the mistrial, but I would stress again that's only whether a mistrial was improperly granted part of the argument, not the greater issue of whether he was, in fact, acquitted. We would submit the answer to that question as a no as well, one, that it's not cognizable, and two, that, frankly, the state court's got it right, but in my opinion, that it is a separate issue. And I would like to address briefly a hypothetical the defense brings up in their reply brief because I did find it interesting, the hypothetical of what if a Louisiana state court were to somehow misapprehend some United States Supreme Court precedent and say, after a person is acquitted, the jury has to come back five days later and confirm the acquittal and the jury just forgot to do that? Of course, that would be a valid acquittal regardless. But I think that's distinguishable in three important ways. One, that's really a question of form and not substance. Just did you follow some hyper-technical requirement? It's not a question of substance. What if a state law required that? There is no state law, and that actually... What if a state law required, subsequent to the verdict, that the jury come back in order of some other requirement? That's a very interesting question, Your Honor. I'm not quite sure how the bench and bar would address that. I suspect that we would find some way to say it's still a valid acquittal because something that hyper-technical that doesn't go to the substance of the issue. I can't imagine that would be upheld as a valid bar. I could be wrong. I mean, isn't it true that when the verdict is announced in open court and the judge polled the jury and the poll meets a requirement of Louisiana law that there be an acquittal entered, is that not an acquittal for purposes of double jeopardy? I would say it is, Your Honor, but the open question is what, in fact, Louisiana law does require after Ramos. And with regard to the defense's hypothetical, second, the way they wrote their hypothetical hinges solely on federal law. There's no state law question in there, although Your Honor certainly brought up an interesting point of what if there was a state law issue in there, and I don't think there's a clear answer to that question. And in that case, in that hypothetical, an acquittal was, in fact, pronounced. Now if this Court disagrees with everything I've said so far and needs to reach the merits, first, I would suggest to this Court that the Louisiana state courts in reading Ramos as requiring unanimity across the board, that that's the better reading. If this Court is still unconvinced, then I would say Louisiana law, as uniquely juxtaposed against Ramos, compels the same result. But aren't you saying that when you consider Ramos, the Louisiana rule has to be disregarded? I mean, we've got a supremacy clause problem there, and Ramos said, if you say that Ramos says that a 10-2 verdict for acquittal is not effective, you're arguing federal law, not state law. And if that's the case, Your Honor, and Ramos does require unanimity across the board, then this Court should reach the merits and declare that the respondent wins on the merits. All right, as a matter of federal law, but not state law. That's correct, Your Honor. The way I would frame it is if Ramos does, in fact, require unanimity across the board, then we would prevail as a matter of federal law. If Ramos, by itself, does not require that, and this Court feels it should reach the merits, then we reach what I consider the juxtaposition of federal law with the Louisiana state law. Louisiana Constitution— I don't know what you mean by juxtaposition. I mean, when you overlay Ramos over state law, it just means Ramos prevails, doesn't it? I would agree with you, Your Honor, and that's why I do think the Louisiana state courts, in finding that Ramos just requires unanimity to render a verdict, period, that they got it right. I'm simply saying if this Court is unconvinced and says, well, Ramos does not, by itself, require unanimity to acquit, then when we look at how Ramos intersects with the Louisiana Constitution, I would say Ramos does dictate that certain parts of the Louisiana Constitution have to fall. For example, the Louisiana Constitution and the companion article in the Code of Criminal Procedure, they each have two separate clauses. One operates for crimes committed before January 1, 2019, and provides that 10 out of 12 is enough to render a verdict. That's the language they use, to render a verdict. That was a law in effect when Owen was tried. Yes, Your Honor, that's correct. We know that that's unconstitutional as per Ramos, and I would say, importantly, the phrase to render a verdict does not further qualify. The words convict, conviction, acquit, acquittal, guilty, not guilty, they're not anywhere in there. So that whole provision, I would say, has to fall under Ramos. And to briefly address what the petitioner said about the writ of erasure fallacy, I think that's a very interesting academic question, but I would question its practical significance here. Obviously, this Court doesn't have the power, even the United States Supreme Court doesn't have the power, to take white out and blot out a statute from the books. But this Court can declare, as the United States Supreme Court can, a statute unconstitutional and thereby unenforceable. As it applies to the party before it. Correct. And that would be, and that would essentially be precedent that would create standing law for how to deal with future petitioners. Well, don't you agree that since the case before the Supreme Court was, whether a 10-2 conviction was valid, that was the issue before the Court, and the issue that you have before us wasn't presented to the Court? And that's correct, Your Honor. The United States Supreme Court did not squarely have the non-unanimous acquittal issue before it. So that is an open question that may need to be decided later. This case may very well be the one to do it. So under Ramos, we know that provision is unconstitutional and unenforceable. And with regard to the writ of erasure fallacy, the way I like to conceptualize it is the statute is still on the books, but it exists as somewhat of a legal ghost. It can't really interact with the legal world of the living, so to speak. But that's not the only part of those Louisiana provisions. The other provision in the Louisiana Constitution and the Code of Criminal Procedure Companion article says for crimes committed on or after January 1, 2019, you need 12 out of 12 to render a verdict. Again, using that verbiage, to render a verdict, not to convict or acquit. I would say to the Court that the phrase on or after January 1, 2019, under Ramos, can be considered an unconstitutional qualification on a constitutional right. So if we designate that provision as unenforceable because it's unconstitutional, to sever it, so to speak, Louisiana is left with a constitutional law that simply says for any crime punishable necessarily by imprisonment and hard labor, you need a 12-person jury. All 12 are required to render a verdict. Now if this sounds like I'm kind of parsing words in a state statute, playing linguistics, so to speak, well, frankly, that's because that's exactly what's going on. And that's the main reason why I would suggest to this Court, the lower federal court got it right when the lower federal court said this all just stems strictly from the functioning of Louisiana state law, so this is not cognizable in federal habeas. What can you point to that changed Louisiana's law that was in effect for offenses before 2019? Sure, Your Honor. Louisiana law. What changed that law? Well, there was no legislative enactment, but what I would point to is the district court level and the intermediate court level decisions that were in effect before this petitioner was tried, all of which have uniformly held that unanimity is required to acquit for pre-January 1, 2019 crimes. Non-presidential opinions by the Court of Appeals. Which are potentially non-presidential under Louisiana law, which I would stress is not cognizable before this Court. Which is inconsistent with what the Louisiana Supreme Court has held. And I would be very interested in that, too, Your Honor. It may be one day that they decide I'm wrong, that unanimity is in fact not required to acquit for pre-January 1, 2019 crimes. And if that day comes, the petitioner would certainly be entitled to file for relief. We may potentially be taking a certiorari petition to the United States Supreme Court. I can't say whether we do that now or not, but, you know, then we would be dealing with a different question. If the Louisiana Supreme Court decided as a matter of state law that unanimity is not required to acquit for pre-January 1, 2019 crimes, then the only issue remaining would in fact be whether Ramos dictates that unanimity is required across the board. Then the federal issue would, in my opinion, squarely be presented to the United States Supreme Court. But I would say where we are now is somewhat of a dichotomy. Either the 6th and the 14th Amendments as per Ramos require unanimity to acquit or those provisions under Ramos are silent on that issue. If they require unanimity to acquit under Ramos, then we prevail on the merits of the federal question. If they don't require unanimity to acquit under Ramos, they're silent on that issue. We would reiterate that this is really an issue of Louisiana state law to be decided by the Louisiana state courts and potentially, I would guess eventually they'll have to hear it, the Louisiana Supreme Court. And because of that, we would submit to this court that the federal district court below got it right and we would ask this court to affirm. And I'm happy to answer any questions the court may have. Thank you, Counsel. Thank you, Your Honor. Your Honor, the respondent at times throughout the argument just now appeared to concede that the question of whether or not the ruling was based on state law or federal law had significance in this case. They acknowledged they were not relying on procedural default and I don't believe they could without a clear expression of that as it relates to the mistrial question. And as to the acquittals, they also conceded that potentially 10 votes could be a, absent a judgment, still be a valid acquittal because the remaining, the following acts would be ministerial acts. So because of that, I do think it is squarely at issue whether or not this court presumes that the trial court reached the federal question in this case and ruled on the basis of federal law. The cases that the respondent cited, for example, Rogers and the other intermediate appellate court case and the two Fifth Circuit, the state Fifth Circuit opinions in this case, both are rife with references to federal law and do not do any of the parsing that the ruling on the basis of state law. And so it seems quite clear from the record and also as the respondent made part of the argument that was in our brief, if the state court had been making a finding on the basis of state law, they would have had to follow the state procedures and that, we're not arguing that this is a case about failure to follow state procedures, but that makes whether or not they were ruling on the basis of state law or federal law clearer. There was no ask to find anything unconstitutional. There was no order or judgment that Louisiana law was unconstitutional. Everyone was proceeding as if federal law controlled. And that's exactly what the court in Michigan v. Long said. They felt compelled. When they reached the merits in their case, they said that they felt that the state court felt compelled by what it understood to be federal constitutional considerations to construe its own law in the manner it did. And here, it seems that the state court felt compelled by Ramos to operate the way it did and deny Mr. Robinson relief. Is your view that federal law requires the entry of an acquittal judgment when there's a less-than-unanimous jury verdict in this case? I believe once the ten votes were counted at the conclusion of deliberations and submitted in writing, then the following acts would be ministerial. There's nothing else to do in the case. Sorry. Maybe you didn't hear the question. Does federal law require the entry of an acquittal judgment when a non-unanimous jury verdict comes back? You mean at 10 or 11 votes, I assume? Sure. 10, 11, 6, 6, whatever. If it's non-unanimous, actually, to make it better, let's make it 10-2 or 11-1. So 10-2, 11-1 in favor of your client. Does federal law require the entry of an acquittal? At this point, yes. Why? Because state law had not changed. So Federal Rule of Criminal Procedure 31A says all verdicts in federal criminal trials have to be unanimous. Right. Second sentence of that says. Is that unconstitutional? No, because Of course not. No one would say it's unconstitutional. We do federal criminal trials like this all the time. So federal law doesn't require the entry of an acquittal simply because the jury is non-unanimous. That has to be true. Right. OK. So the question is, why would federal law require the entry of an acquittal in this case if it doesn't require the entry of an acquittal in a federal criminal trial that we have across the street today where the jury comes back 10-2 in favor of the defendant? Because I think the operational question is whether or not, under the law as written, adequate votes to acquit were presented to the court. Because of state law. Because of state law, but not because of an interpretation of state law. Because of state law as written. And if the state court were not doing that because they misconstrued federal law, this court can get grant relief. And what is the federal law that you're saying that they misconstrued? Ramos. Right. So it's not that you're saying that the Sixth Amendment. When you say federal law, you mean the opinion the way that it's written. So when, for example, in Ramos reiterates the holding of the case, which says that the Sixth Amendment requires a unanimous jury to render a verdict. That's verbatim straight from Ramos. They misinterpreted that how? So to answer the Ramos question, Justice Horst has said, we took this case to decide whether the Sixth Amendment right to a jury trial, as incorporated, requires a unanimous verdict to convict a defendant of a serious offense. And elsewhere in the opinion where they're responding to the dissent, they say we hold unanimous jury to render verdict. Certainly. And so what part of that is misunderstood in the Louisiana case? So first of all, again, I think Justice Gorsuch was clear what the question the court was deciding was. Obviously, it's difficult to discuss the end of the case without using the word verdict. But we can also look to the text of the Sixth Amendment, which talks about the rights of the accused at a jury trial, and specifically the rights, the text of the 14th Amendment, which incorporates it by protecting the liberty of defendants. And to read Ramos the way respondents suggest would be to do the opposite of defend liberty. And it would make it harder for a person in jeopardy to re-obtain their liberty. All right, counsel. Thank you. Thank you. Very interesting question. Well presented by both of you. Appreciate your assistance today. Unless I miscount, that is our last argument of the morning. We are in recess.